UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.  04-20707-CIV-ALTONAGA/Turnoff


KILLMON, et al.,

     Plaintiffs,

v.

CITY OF MIAMI, et al.,

     Defendants.

_____/


**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT CITY OF
MIAMI'S MOTION FOR PROTECTIVE ORDER CONCERNING THE
FTAA OPERATIONAL PLAN**

**INTRODUCTION**

The central allegation of this action is that the Defendant City of Miami ("City") created a

specific plan for policing demonstrations at the Free Trade Area of the Americas ("FTAA") meetings

in Miami in November 2003.  That plan included a deliberate and coordinated intent to prevent

potential violence, a wholly speculative prospect, by preempting lawful expressive activity.

Plaintiffs allege that the Operational Plan ("Plan") was carried out as intended, resulting in their

arrests without probable cause and the unlawful use of force against them.  Plaintiffs' claims against

the City require them to prove that their injuries resulted from a policy, practice, and/or custom of

the City.  Moreover, apart from their *Monell* claims, Plaintiffs are required to prove intent to

establish a violation of their constitutional rights, or, at a minimum, "deliberate indifference" to their

rights.  For these reasons, the disclosure of the Operational Plan is necessary to the fair adjudication

of this case.

Against this backdrop, Defendant City claims that the Plan cannot be produced, even under a protective order, because it would jeopardize future police actions, even though the demonstrations occurred more than three years ago. At the same time, and directly contrary to this position, the City argues that the FTAA protests were a one time occurrence. The City cannot have it both ways.

The City also argues that the Plan would not be subject to disclosure pursuant to Florida's Public Records Act, but this contention, necessarily, cannot meet the balancing test the Court must apply to decide whether the requested materials should be disclosed as the City's argument ignores the important distinction between a generalized request from the public to obtain information as opposed to the weight that must be given to a request made for documents central to ongoing litigation, as well as the fact that the Eleventh Circuit does not recognize an "official information" privilege for law enforcement practices.

This Circuit requires a demanding "balancing of interests," weighing the requesting party's need for access to the documents against the City's need for confidentiality. *Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983). Against that test, Plaintiffs are clearly entitled to obtain the documents and the only remaining issue is the terms of a protective order. If Defendants do not want to disclose the Operational Plan, under a protective order, they should be precluded from arguing that they had no policy, practice, and/or custom to intentionally violate Plaintiffs' constitutional rights.[1]

## STATEMENT OF FACTS

Plaintiffs' discovery requests for the FTAA meetings Operational Plans of Defendant City and Miami-Dade County ("County") initially came before the Court to determine whether the Plans contained information necessary to prepare the Third Amended Complaint and to meet the

---

[1] In such a case, Plaintiffs respectfully request that the Court issue a judicial determination that Plaintiffs have proven that Defendant's actions and the resulting constitutional violations were part of and the result of an intentional policy, custom and/or practice to preempt protected expressive activities and which showed deliberate indifference to Plaintiffs' rights.

2

heightened pleading requirements Defendants contended are required. (Dkt. #219.) On July 1, 2005, Defendants City and County were ordered to provide their respective FTAA Operational Plans to the Court for *in camera* review. Subsequently, the matter was referred to Magistrate Judge Turnoff in the Court's absence. (Dkt. #252.)

Following hearings on July 7, 2005, and again on July 8, 2005, nearly all of which were conducted in-chambers with only the Defendants, the court permitted each Defendant to prepare a summary document to be provided to Plaintiffs under an extraordinarily restrictive, counsel-only, protective order.[2] (Dkt. #257.) Pursuant to the Magistrate's Order, each defendant created a "List of Names," including individual ranks and little more, derived from the Plans and filed under seal with the Court. *Id.* The lists were provided to Plaintiffs pursuant to the Magistrate's July 12, 2005 Order.

At that time, Plaintiffs filed objections to both the scope of the Magistrate's order following the *in camera* review of the two Operational Plans and the specific protective order entered. (Dkt. #263.) Plaintiffs' objections included, *inter alia*, that there was no good cause for a protective order as nearly all of the limited information provided subject to the secrecy provisions was, in fact, already public and that Defendants could not meet their burden to demonstrate that there was any potential harm from the release of the Plans then nearly two years after the FTAA protests. *Id.* Because disclosure of the Plans was being sought solely for purposes of amending the Complaint, the Court upheld the Magistrate's Order, but left open future disclosure for the merits litigation and vacated the protective order entered by the Magistrate as "no longer necessary." (Dkt. #341.)

---

[2] At the status conference on July 1, 2005, Plaintiffs' counsel represented to the Court that they would only agree to a counsel-only protective order (while retaining the ability to return to the Court if additional disclosure was necessary to confer with our clients or for depositions, etc.) concerning *substantive information* in the Operational Plans. As noted in their objections, Plaintiffs would not have agreed to such a restrictive protective order for merely a "list of names" derived from the Plans, as ordered disclosed by Magistrate Judge Turnoff, nor is such a restrictive order necessary now for disclosure of the Plans in their entirety.

At the recent hearing on December 4, 2006, to set new discovery deadlines in this case, the disclosure of the Plans was again put in issue. In response to Defendants' objections to production of their respective Plans, the Court ordered the City and County to file motions for a protective order so that this matter could be resolved. (Dkt. #414.)

## ARGUMENT

### I.   The Requirement of "Good Cause" to Justify Issuance of a Protective Order

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). The discovery sought need only appear reasonably calculated to lead to the discovery of admissible evidence. *Id.* See also *U.S. v. Nixon*, 418 U.S. 683, 709 (1974) (finding discovery should be broad and a generalized assertion of privilege must yield to the demonstrated, specific need for evidence).

Federal Rule of Civil Procedure 26(c)(2) permits a court, upon motion by a party and a showing of "good cause," to enter a protective order to provide that disclosure or discovery may be had only on specified terms and conditions. *Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304, 1313 (11th Cir. 2001). The Eleventh Circuit applies a four-part test for finding "good cause." The party moving for a protective order must demonstrate: "(1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order.[3]" *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987).

Good cause "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac*, 805 F.2d 1, 7 (1st Cir. 1986). *See also Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998). The Eleventh Circuit also requires a more demanding

---

[3] Since Defendant City is arguing against any disclosure of the Operational Plan, Plaintiffs reserve the right to address any of these factors to the extent that they are not discussed herein and relate to the terms governing use of the information in the Plan after the Court resolves the issue of disclosure of the Plan.

"balancing of interests," weighing the party's interest in access against the other party's interest in

confidentiality." *Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983); *Farnsworth v. Proctor &*

*Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

## II.    Plaintiffs' Need for the Operational Plan, Its Relevance to Their Claims and the Public Interest Requires Disclosure of Defendant's FTAA Operational Plan

Defendant City argues that the federal common law qualified "official information privilege"

precludes *any* disclosure of the Operational Plan because it is a "blueprint" or "playbook" of "tactics,

strategy, methodology, contingency responses, officer movements, personnel, and equipment

inventories," for "dealing with mass demonstrations" the disclosure of which to the public would,"

allegedly,"curtail the Miami Police Department's ability to respond to and control future

demonstrations, and thereby protect the public."[4]  Def.'s Memo at 3-4; Affidavit of Deputy Chief

Frank Fernandez ("Fernandez Aff.") at ¶ 4-6, 11(a), (e) & (f). Defendant also argues that the

potential disadvantages of disclosure of the Operational Plan outweigh Plaintiffs' need for the

---

[4] Plaintiffs have previously informed the Court that they do not anticipate the need for information in the Operational Plan about maritime operations.  Plaintiffs would add, for purposes of this motion, that they are also not seeking disclosure of information in the Plan related to: aviation operations; traffic patrol plans (to the extent that they do not involve officers who engaged in stops, detentions or arrests); counter-sniper assignments, procedures, communications and positions; responses to unidentified items; air security, in-flight aircrafts ,or highjacking information and identification; hospital information; itinerary information related to FTAA delegates for times other than when attending FTAA meetings.

Plaintiffs are willing to limit disclosures in the following categories to information related to their arrests and/or protest activities: emergency procedures, including evacuation and transportation routes; locations to be searched for explosives; vehicle sweep information; Fire Department/EMS activity unrelated to the dates and times of Plaintiffs' arrests or use of excessive force against Plaintiffs or other demonstrators; radio frequency information; information related to international or domestic terrorism, except where it relates to demonstrators or the planning or dealing with/responding to demonstrators and demonstrations to the extent that conduct by protesters may be classified or mis-classified as such); responses to nuclear, chemical or biological weapons attacks to the extent that it was the basis for the arrests of Plaintiff Diamond and others; scenario information for situations not involving protesters, such as Foreign Intelligence information, unless it relates to Plaintiffs or demonstrators or demonstrations).   However, if any of the Defendants intend to assert that their actions, which resulted in violations of the Plaintiffs' constitutional rights, were a result of any agreements made with other agencies concerning any of these areas, or that they took action against the Plaintiffs based on these enumerated areas of the Plan, then Plaintiffs are seeking such information as part of the Operational Plan disclosure.

information to prove their claims based on an alleged threat to individual officers' safety (relying on alleged incidents at other demonstrations, most of which are in other countries) and the effectiveness of law enforcement "to respond to and control future demonstrations."  Fernandez Aff. ¶¶ 9, 10, 11(a), (e) 7 (f).  As explained below, the Plaintiffs' need for this relevant information, as well as a balancing of the interests asserted by each party, weighs in favor of disclosure.

Defendant's argument is fatally flawed in a key respect.  The Eleventh Circuit does not recognize a federal "official information" privilege in the context of litigation related to law enforcement practices.  Defendants sole authority for the assertion of this privilege is based on *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 879 (5th Cir. 1981),[5] and cases from other jurisdictions.  In *Branch*, although the Court recognizes that the privilege exists in evidentiary theory, the issue discussed and decided is whether an explicit federal statutory provision under Title VII, prohibiting public disclosure of deliberative process information concerning discrimination claims received by the Equal Employment Opportunity Commission, bars disclosure of that information in related civil litigation.  *Id.* at 879.  No such federal statutory exemption exists in this case for the Operational Plan.  Moreover, the Eleventh Circuit, as do most federal courts, generally, disfavors this type of privilege in federal civil rights claims.  *See ACLU v. Finch*, 638 F.2d 1336, 1342-44 (5th Cir. 1981); *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992).  Assuming *arguendo* the Court considers Defendant's argument as to the application of this privilege here, the City has failed to meet its burden to prevent disclosure of the Plan.

In those courts that have recognized a *qualified* federal common law privilege for "official information," *King v. Conde*, 121 F.R.D. 180, 190 (E.D.N.Y. 1988), the application of which

---

[5] Plaintiffs agree that in *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as precedent certain former Fifth Circuit opinions, however, the effective date is September 30, 1981, not November 3, 1981.  In any event, *Branch* does not lend the support to prevent disclosure of the Plan which Defendants seek to claim here, nor does any other Eleventh Circuit case.

involves a balancing of interests virtually identical to the test this Circuit applies generally to privileges.  To invoke the privilege, a party must make a substantial threshold showing that specific harms will result.  *Goodman v. City of New York*, 2004 WL 1661105 (S.D.N.Y. 2004).  Courts must weigh the potential benefits of disclosure against the potential disadvantage, plaintiffs' need for the information and whether it is available from some other source, which is arguably the most important factor.  *See e.g., Crawford v. Dominic*, 469 F.Supp. 260, 263 (E.D. Pa. 1979); *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 127 (N.D.N.Y. 1984).   In civil rights cases against law enforcement, there is, generally, no other source for the information sought.  *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Ca. 1995).   In civil rights cases involving allegations of police misconduct, a balancing of interests is moderately pre-weighted in favor of disclosure.  *Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Ca. 1987), particularly where the disclosure is sought by an individual litigant and his/her counsel. In such circumstances, a sufficiently well-crafted protective order provides adequate safeguards for the information.  *Id.* at 662, 666.

The court should also consider the public's interest in the disclosure of the information.  The strong public interest in uncovering the civil rights violations at issue in this litigation would be substantially harmed if access to the Operational Plan is denied.

> Each citizen acts as a private attorney general who takes on the mantel of the sovereign, guarding for all of us the individual liberties enunciated in the Constitution.  Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all.  Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

*Wood v. Breier*, 54 F.R.D. 7, 10-11 (E.D. Wisc. 1972) (internal quotation marks and citations omitted).   The "great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery."  *King*, 121 F.R.D. at 195.

A balancing of these factors favors disclosure.  Plaintiffs are entitled to discovery of the Operational Plan because they have sufficiently alleged facts based on the Plan which, if true, support a reasonable inference that Defendant City is liable under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).  *See e.g., Torres v. Kuzniasz*, 936 F.Supp. 1201, 1209-14 (D.N.J. 1996) (internal affairs investigation related documents subject to disclosure as relevant to proving policy or custom in excessive force case).

Specifically, Plaintiffs have alleged a deliberate and joint plan (i.e., Defendant's Operational Plan), developed through meetings over the course of more than six months and implemented for the FTAA protests, "requir[ing] the multiple agencies involved to 'submit to a single plan and a single command,' with  the City of Miami individual supervisory Defendants in a 'primary leadership role.'" Third Amended Complaint ("TAC") at ¶ 84.  The Plan was intended to, and did, produce violations and deprivations of Plaintiffs' First, Fourth, Fifth and Fourteenth Amendment rights.  TAC ¶ 76.  Defendant City of Miami developed "Rules of Engagement" to implement the Plan and each agency was required to follow those rules.  *Id.*  Miami Police Department ("MPD") Chief Timoney "announced that defendants' actions were based on the policy that: '[t]he easiest way to prevent violence and disturbance at the FTAA Summit was to use a heavy police presence to limit protest." TAC ¶ 1.  Plaintiffs have also alleged that their detention at  the "kennel," a make-shift detention center with inhumane conditions, created and operated jointly by MPD and the Miami-Dade Police Department solely for FTAA arrestees, was part of the joint Plan created and adopted by the City Defendant.   TAC at ¶ 26, 27, 76 & 110.

Disclosure of the Plan is also required as it contains information concerning high-ranking officials "whose edicts and acts may fairly be said to represent official policy" and may, by their actions, also subject the government entity to liability under Section 1983.  *Monell*, 436 U.S. at 694. Even if Defendants' actions during the FTAA protests are viewed as a "single incident," the Plan

may establish *Monell* liability on a number of different bases. First, a "single incident" may establish *Monell* liability where, as here, it is part of a deliberate choice by policymakers to "pursue a particular course of action." *Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1969). *See also Cooper v. Dillon*, 403 F.3d 1208, 1223 (11th Cir. 2005) (deliberate decision to enforce state statute establishes liability for *Monell*). The Plan may also prove *Monell* liability if it is shown to be an unconstitutional municipal policy. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831-32 (1985), *rehr'g denied*, 473 U.S. 925 (1985). It does not matter whether the same action taken in the past will be used again in the future as even a single decision by a policymaker "unquestionably constitutes an act of official government policy." *Pembauer*, 475 U.S. at 475. *See also Owen v. City of Independence*, 445 U.S. 622 (1980); *Cooper*, 403 F.3d at 1222.

Also, if, as Defendant argues, the Plan contains information such as "methodology, contingency responses, tactics, strategy, and officer movements," Fernandez Aff. at ¶ 4, the Plan may establish *Monell* liability for the failure to train MPD officers adequately on the lawful bases for arrest, use of force, detention, sexual assault, and other violations of rights implicated by Plaintiffs' claims. *City of Canton v. Harris,* 489 U.S. 378, 380 (1989). Clearly, this information is relevant and Plaintiffs have a demonstrated need for it.

Against Plaintiffs certain need for this information, Defendant City of Miami offers only speculative harm and disadvantages which do not outweigh Plaintiffs' need for disclosure. None of the factors courts find establish potential harms to disclosure have been shown by Defendant City. There are no likely specific, immediate, and concrete: (1) threats to police officers' safety; (2) invasion of police officers' privacy; (3) weakening of law enforcement programs; (4) chilling of police internal investigative candor; (5) chilling of citizen complainant candor; or violations of (6) state privacy law. *See e.g., King v. Conde*, 121 F.R.D. at 191-94   Defendant's speculation about alleged threats to officer safety and weakening of law enforcement programs with regard to MPD

policing of mass demonstrations if the Plan is disclosed do not carry the heavy burden to block

disclosure.  Fernandez Aff. at ¶¶ 10, 11(a), (e) & (f).

First, the City claims that "disclosure will compromise the safety of the officer in the field...if

the officers assigned are unable to maintain the peace" because "disclosure of MPD's staffing

numbers and methodology with respect to the specific officer assignments will reveal MPD's

personnel potential weaknesses." Fernandez Aff. at ¶ 11(f).  Other courts considering the "threat to

police officer safety" have defined this factor as requiring disclosure of specific information that

could present a danger to a particular officer, such as disclosure of an officer's home addresses in

cases involving past violence between him/her and a plaintiff or other members of the community.

*King*, 121 F.R.D. at 191.  Plaintiffs assume that the Operation Plan would not contain any officers'

home addresses and they would be willing to have any redacted.[6]

The purported tactical considerations Defendant raises have also been rejected as a basis for

denying disclosure in light of a plaintiff's demonstrated need for the information.  *See Kelly*, 114

F.R.D. at 666 (law enforcement interest outweighed regarding disclosure of manuals, memoranda,

and other documents reflecting police department policies established for use of force in making

arrests and training on same in light of protective order governing terms of disclosure).  It also

stretches credulity to believe that after the general public has observed and documented, through

video and extensive news reporting, the MPD's so-called secretive tactical game plan, a law

enforcement entity so concerned with protecting this "confidential" information against detection

would seek to use those same tactics, weapons, methods, responses, officer movements, equipment,

and schedules repeatedly.

---

[6] Also, as explained in Section IV. below, Plaintiffs already possess lists with officers' names and badge numbers which were obtained through Public Records Act requests or as part of the limited discovery permitted by the Court to amend the Complaint.  Defendant has also made documents readily available to the public concerning officer field force formations, use of force manuals and personnel information.  *See* Section IV., *infra*.

As to Defendant's claim that disclosure would weaken law enforcement programs, Fernandez Aff. at 8-10, much of these allegations relate to unsupported and undocumented speculation about protesters at other demonstrations, in some cases over six years ago. *Id.* at ¶¶ 9, 10. Therefore, disclosure puts no MPD officer at risk. Defendant's rank speculation about the past, none of which involves actual FTAA demonstrations in Miami 2003 involving any of these Plaintiffs, is precisely the type of policies and acts which criminalize dissent that are at the core of what this litigation seeks to remedy and prevent. *See Bourgeois v. Peters*, 387 F.3d 1303 (11th Cir. 2004).

The Supreme Court has repeatedly instructed that, if the First Amendment means anything, it is that the government may not suppress or disrupt speech in advance of its expression in order to prevent speculative violence. *Cox v. Louisiana*, 379 U.S. 536, 551 (1965). The police may not preempt expression in Miami based on stereotypes of some unidentified persons or groups who <u>may</u> have engaged in unlawful activity in Seattle, Quebec or Prague years earlier. This is the worst type of guilt <u>by</u> and <u>for</u> association that the constitution prohibits. *See NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982); *Healy v. James*, 408 U.S. 169 (1972). Defendant should not be permitted to use the discovery process as a shield against the unconstitutional policy which it so boldly and willfully created and executed to violate Plaintiffs's rights. Even if there were some merit to this argument, a protective order that limits disclosure to the plaintiffs' attorneys, clients, support staff, and experts could be an "especially apt remed[y] for this problem." *King*, 121 F.R.D. 180.

This case is no imaginary street battle being waged against the police in multiple jurisdictions and around the world, as Defendant claims. Plaintiffs were unlawfully arrested, assaulted, jailed, and prosecuted by Defendant. That is the reality of this case and Plaintiffs are entitled to the documents necessary to prove that their constitutional rights were violated. *See Kunstler v. City of New York*, 439 F.Supp.2d 327, 328 (S.D.N.Y. 2006) (law enforcement privilege intended to, *inter*

11

*alia*, prevent disclosure of law enforcement techniques and procedures does not prevent disclosure of information about the presence of undercover police officers where protesters filed Section 1983 action alleging that city policy officers violated their constitutional rights during demonstration).

Defendants' reliance on *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1991), is misplaced. Unlike the plaintiffs in *Sanchez*, Plaintiffs here can show that discovery of the Plan is not only relevant, but is required to prove their claims. There is no alternative way to prove that Defendant acted with intent and deliberation in developing and executing the Plan which Plaintiffs allege was applied to disrupt, prevent and stifle lawful expressive activities during the FTAA demonstrations.[7] *Soto*, 162 F.R.D. at 616; *Barrett v. City of New York*, 237 F.R.D. 29, (E.D.N.Y. 2006) (law enforcement privilege does not protect Civilian Complaint Review Board documents relating to pending investigation of officers in case challenging false arrest, illegal strip search, malicious prosecution and fabricated evidence). Impediments to fact finding in Section 1983 litigation, such as the preclusion of any disclosure sought by Defendant here, are not favored. *Kunstler*, 439 F.Supp.2d at 328. *Compare Sanchez*, 936 F.2d 1027 (protective order granted because Plaintiffs could obtain information to prove their claim of discrimination from sources other than the personnel files at issue, including access to the same statistical data utilized by defendant).

Defendant also argues that the Plan is not discoverable under the limitations imposed by Rule 26(b)(1)(i) and (ii) of the Federal Rules of Civil Procedure. Neither of these provisions supports non-disclosure of the Operational Plan. Defendant has not suggested any other source that is more convenient or less burdensome than disclosure of the Operational Plan for the simple reason that there is none. Defendant has gone to great lengths, in court hearings and in its pleadings, to explain

---

[7] Since the material sought is in the possession of the defendant, the court should not require the plaintiff to prove the relevance of all of the information contained in the Operational Plan, or to prove that the information is available elsewhere. *King v. Conde*, 121 F.R.D. at 195. Rather the court should err on the side of wider discovery. *Id.*

how the FTAA protests and the Operational Plan that was developed to respond to this event was unique and a one-time momentous happening in the City's view.  How Defendant can now say that Plaintiffs could obtain the information in its Operation Plan from another source defies common sense and the City's own representations.  If Defendant believes that there is another source for the Plan, it should identify it for the Court and make the necessary evidentiary showing to prove it.

Without being specific, the City also argues that the "burden" of discovery of the Plan outweighs its benefit to Plaintiffs in light of the "important (sic) of the issue at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Def.'s Memo at 7.  Defendant has provided no evidence of any "burden" on the City to produce the Plan, especially since the Plan has already been produced twice for an *in camera* inspection by the Court.  Defendant's arguments regarding the limitations in Rule 26(b)(1)(i) and (ii) are without merit and unpersuasive.[8]

### III.    The State Law Public Records Act Exemption Does Not Prohibit the Disclosure of the Operational Plan in Federal Civil Rights Litigation

The City asserts that disclosure of the Operational Plan is barred based on a state statutory Public Records Act exemption which includes "any comprehensive policies or plans compiled by a criminal justice agency pertaining to the mobilization, deployment, or tactical operations involving in responding to emergencies" that are not generally made available to the public for inspection. Def.'s Memo at 5.  According to the City, this state law provision should be respected by this Court as a matter of comity.  *Id.*  This argument deliberately ignores that, as Plaintiffs have asserted federal constitutional claims in this case, any claims of privilege are controlled by federal common law.  *See Finch,* 638 F.2d at 1342-43; *Kerr v. U.S. District Court*, 511 F.2d 192, 197 (9th Cir. 1975); *In re Pebsworth,* 705 F.2d 261, 262 (7th Cir. 1983); and Fed. R. Evid. 501.

---

[8] Defendant also makes an unsupported statement that the Court has already made a determination that the information in the Plan is not relevant to Plaintiffs' claims.  However, if the Court had already made this finding, this matter would not be under consideration now pursuant to Judge Altonaga's Order dated December 4, 2006.

The City's argument has been rejected by the Eleventh Circuit.  In *ACLU v. Finch*, Mississippi residents brought suit against state official for violations of their First Amendment and other constitutional rights based upon harassment and surveillance of lawful political activities largely through the illegal activities of a state commission. *Finch*, 638 F.2d at 1342-43. In discovery, the *Finch* plaintiffs sought disclosure of certain files and records of the commission which had been sealed under a state statute abolishing the commission shortly after the litigation was filed.  *Id.*  The government unsuccessfully argued that the federal court should observe the "privilege" created by the state statute in the interests of comity.[9]  638 F.2d at 1343.

Evidentiary privilege in federal courts are governed by Rule 501 of the Federal Rules of Evidence.  Except "with respect to an element of a claim or defense as to which State law supplies the rule of decision," privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience."  Fed. R. Evid. 501.  When a litigant seeks to assert a privilege "not existent in the common law but enacted by the (state) legislature based on unique considerations of government policy," courts test it by balancing the policies behind the privilege against the policies favoring disclosure.  *Finch*, 638 F.2d at 1343. "That the courts of a particular state would recognize a given privilege will not often of itself justify a federal court in applying that privilege.  It is sometimes said that 'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.  (internal citations omitted).  *But there is almost always such a cost to 'the special federal interest in seeking*

_____

[9]  There was a disagreement between the appellate and district courts concerning whether there was even an actual evidentiary privilege established by the state statute, however, the Court assumed, for the sake of argument, that the state courts would construe the statute as creating a privilege. *Finch*, 638 F.2d at 1343.

*the truth in a federal question case.*[10]'" *Id.* (emphasis supplied).  *See also Simmons v. Newmann*, 1998 WL 776846 (S.D. Fla. 1998) (rejecting exemption in § 119.07, Fla. Stat., of the Public Records Act as preventing disclosure of addresses of former sheriff's office employees needed to be served with subpoenas in order to prosecute civil rights case).

On balance, the application of a state privilege in a federal case would "frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) (holding state privilege statutes are not binding in discovery for federal civil rights police misconduct action).

> [S]tate rules protecting state officers must always be viewed with caution because they may be parochially designed to thwart federal interests: It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statute whose central purpose is to protect citizens from abuses of power by state and local authorities.  If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*King*, 121 F.R.D. at 187-88.

Here, the federal interest in an independent evaluation of the claimed privilege is particularly strong.[11]  "The purpose of enacting [Section] 1983 was to ensure an independent federal forum for adjudication of alleged constitutional violations by state officials; and ... there is a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of

---

[10]  Even where a federal civil action involves both federal and state claims and the asserted privilege is relevant to both claims, federal courts have consistently held that privilege is governed by federal law. *See Hancock v. Hobbs*, 967 F.2d at 466-67.

[11]  Similarly, courts have also found that the application of exceptions in the federal Freedom of Information Act are also "not intended to create evidentiary privileges for civil discovery." *Kerr*, 511 F.2d at 198; *Hodgson v. GMAC*, 54 F.R.D. 445, 446 (S.D. Fla. 1972).

their agents is alleged." *Finch*, 638 F.2d at 1343.  Contrary to Defendant's representation, the state law "privilege" asserted by the City is not "fully consistent" with the federal common law "official information" privilege, to the limited extent that such a privilege exists, nor is there "no conflict with" or "cost" to the federal substantive policy at issue in this case. Def.'s Memo at 6.  The federal interest in adjudication and "seeking the truth" in Plaintiffs' claims of constitutional violations of massive police and government misconduct pursuant to Section 1983 requires disclosure of the Operational Plan "despite the existence of a state rule holding the same [information] privileged." *See Carr v. Monroe Manufacturing Co.*, 431 F.2d 384, 388-89 (5th Cir. 1970) (on balance, need for disclosure of employee and employer information which raised state law privacy concerns outweighed by relevance to racial discrimination claims and "necessary for the just disposition" of the case).

The reasoning of the state courts in the two cases advanced by Defendant City, *Timoney v. City of Miami Civilian Investigative Panel*, 917 So.2d 885 (3d DCA 2006), and *Mastrapa v. South Florida Money Laundering Strike Force*, 928 So.2d 421 (3d DCA 2006), are totally inapt.  As discussed above, the issue of disclosure now before the Court is one of federal law, not state law. Defendant's cases, which interpret and apply state law, are not relevant to a federal civil rights action brought pursuant to 42 U.S.C. Section 1983 to challenge police and government misconduct. *Finch*, 638 F.2d at 1343.  Moreover, *Timoney* did not, as required here, weigh the competing factors involved in discovery of material central to an adversary process. Also,  *Mastrapa* is irrelevant because the court did not address the assertion of a privilege by a law enforcement entity – the defendant merely argued that production of some of the information sought in an out of state criminal proceeding was an "undue hardship" because it related to "ongoing law enforcement investigations."  *Id.* at 423-24.  Defendant has not stated or proven any such burden exists here.

Defendant also cites to several cases which lend no support to precluding any disclosure of

the Operational Plan.  Def.'s Memo at 6 .  *Jaffee v. Redmond*, 518 U.S. 1 (1996), *Memorial Hospital v. Shadur*, 664 F.2d 1058 (7th Cir. 1981), *Lora v. Board of Education*, 74 F.R.D. 565 (E.D.N.Y. 1977)*, all address the well established psychotherapist-patient privilege, and medical information, both of which take into account privacy principles not asserted or at issue here.  Defendant's cite to *Johnson v. City of Philadelphia*, 1994 WL 612785 at *11 (E.D.Pa. 1994) (and cases cited therein), actually supports Plaintiffs' position that, even using a balancing test, relevant information should be disclosed in the context of police misconduct claims.  Defendant's argument should be rejected.

**IV.**    **No "Good Cause" Exists Where Some of the Information Sought to be Protected From Disclosure is Publicly Available**

Defendant has not met the burden of proving "good cause" because it cannot establish the requisite concrete "harm" from disclosure of the Operational Plan because some types of information which Defendant refers to as requiring protection might have already been disclosed through public records or as readily observable.  And even if this is the case, Plaintiffs still show an overriding need for the Operational Plan and its relevance to their claims because no publicly available information could provide Plaintiffs with evidence of whether the Plan shows that Defendant's policy included a deliberate and coordinated intent to preempt lawful expressive activity and that this policy was carried out as intended, resulting in Plaintiffs' arrests without probable cause and the unlawful use of force against them.

Defendant claims that its "personnel and staffing schedules, officer movements and equipment inventories" allegedly contained in the Operational Plan are "highly confidential." Fernandez Aff. at ¶ 4.  However,  anyone who was present in downtown Miami during the FTAA demonstrations could see where officers were stationed and their formations, movements and equipment.  Defendant also made some of these types of information available to the general public through its After-Action Report which describes its command staff, as well as other individuals

involved in Defendant's, and other agencies', law enforcement action during the FTAA meetings. *See* Plaintiffs' Notice of Filing  in support of this opposition ("Pls.' Notice of Filing") at Ex. 1 (MPD) and Ex. 2 (Miami-Dade PD).  Also, in response to an interrogatory request by Plaintiffs seeking to identify one potential defendant by requesting the names of all officers employed by the MPD during the  FTAA meetings whose last names began with "T," the City of Miami voluntarily produced, outside any protective order, a computer print-out of <u>all</u> MPD officers deployed on November 17, 2003, for the FTAA. *Id.* at Ex. 3. While the document does not link the officers to their specific roles, if any, during the FTAA, as discussed above, other public documents do.  MPD command staff apparently write their own narrative biographies for posting on the department's public website and are free to identify their roles during the FTAA.  Two such documents are that of then-Assistant Chief Fernandez and then-Captain Michael Columbo, each of whom freely and publicly described his assignment during the FTAA protests. *Id.* at Ex. 4.[12]  The Miami-Dade State Attorney's Office also disclosed, through a Public Records Act request, the command staff of MPD for the 2003 FTAA meetings.  *Id.* at Ex. 5.  To be sure, these are but a handful of examples of what Defendant now claims is so-called "confidential" information that is already in the public domain.

## V.     A Protective Order Providing for the Terms of Disclosure of the Operational Plan Would Provide Sufficient Safeguards

The entry of a protective order between the parties concerning the Operational Plan would provide sufficient safeguards to protect against the alleged potential injuries described by Defendant City. [13]  *See e.g.*, *King*, 121 F.R.D. at 190; *Kelly*, 114 F.R.D. at 666 (ordering disclosure of police

---

[12]  This information was previously made publicly available by MPD on its website at: http://www.miami-police.org/dept/overview.asp?dept=fieldoperations (Chief Fernandez); http://www.miami-police.org/net/netoverview.asp?page=5&net=Flagami (Capt. Colombo). *See* Dkt. #263 at Ex. 4.

[13]  Plaintiffs' counsel are reluctant to legitimize the accusation by Defendant's counsel that even under a signed confidentiality agreement concerning the terms of disclosure of the Operational Plan that Plaintiffs' counsel cannot be trusted to abide by the terms of such an agreement.  Def.'s Memo at 8-9. Plaintiffs' counsel are experienced civil rights litigators who have entered into many similar agreements in

methods and tactics related to use of force). Plaintiffs are willing to agree that disclosure of the information in the Operational Plan, to the extent it is not publicly available, shall only be available to Plaintiffs' counsel (including any support staff, paralegals and experts designated by Plaintiffs to assist them) and the individual Plaintiffs to the extent that disclosure is necessary to prosecute this case. If there is information contained in the Plan which is included in the list provided by Plaintiffs in footnote four of this memorandum, Plaintiffs are willing to concede that such information could be either redacted or withheld for the time being, reserving a right to seek such information if it is determined through discovery potentially to be relevant and necessary to Plaintiffs' case. "Absent a special showing in a particular case, these kinds of measures usually will offer sufficient protection to the governmental interest. *Kelly*, 114 F.R.D. at 666.

If Defendant does not want to disclose the Operational Plan, even under a protective order, it should be precluded from arguing that it had no policy, practice, or custom to intentionally violate Plaintiffs' constitutional rights and the Court should issue a judicial determination that Plaintiffs have proven that Defendant's actions and the resulting constitutional violations were part of and the result of an intentional policy, custom and/or practice to preempt protected expressive activities and which showed deliberate indifference to Plaintiffs' rights.

## CONCLUSION

Based upon the foregoing reasons, Defendant City of Miami's Motion for Protective Order to prevent any disclosure of the FTAA Operational Plan should be denied. The Court should Order disclosure of the Operational Plan under the terms of a protective order which permits Plaintiffs, and their clients, support staff and experts, to access the information to the extent necessary to prosecute this case and prove their claims.

---

the course of litigating against the government in various contexts, including police misconduct and litigation involving mass demonstrations involving local, state and federal law enforcement agencies. Indeed, in this case, Plaintiffs' counsel have been operating under a restrictive protective order for the last year.

DATED: January 17, 2007

Respectfully Submitted,

_____ s/ Andrea Costello _____
ANDREA COSTELLO, FBN 532991

Carol A. Sobel (Pro Hac Vice)
LAW OFFICE OF CAROL A. SOBEL
429 Santa Monica Boulevard, Suite 550
Santa Monica, CA 90401
T. 310 393-3055; F. 310 393-3605
CarolSobel@aol.com
NATIONAL LAWYERS GUILD
MASS DEFENSE COMMITTEE

Andrea Costello,  FBN 532991
Alice K. Nelson,  FBN 211771
SOUTHERN LEGAL COUNSEL, INC
1229 N.W. 12th Avenue
Gainesville, FL 32601
T. 352 271-8890; F. 352 271-8347
andrea.costello@southernlegal.org
alice.nelson@southernlegal.org

Robert W. Ross, Jr.,  FBN  921660
ROSS LAW FIRM, P.L.
3923 Lake Worth Road, Suite 102
Lake Worth, FL 33461
T. 561 241-2790; F. 561 241-2790
bravelaw@mindspring.com
NATIONAL LAWYERS GUILD
MASS DEFENSE COMMITTEE

Mara Verheyden-Hilliard (Pro Hac Vice)
Carl Messineo (Pro Hac Vice)
PARTNERSHIP FOR CIVIL JUSTICE, INC.
10 G St. NE, Suite 650
Washington, DC 20002
T. 202 789-4330; F. 202 789-4333
mvh@JusticeOnline.org
cm@justiceonline.org
NATIONAL LAWYERS GUILD
MASS DEFENSE COMMITTEE

Jonathan Moore (Pro Hac Vice)
BELDOCK, HOFFMAN & LEVINE LLP
99 Park Avenue, Suite 1600
New York, NY 10016
T. 212 490-0400; F. 212 557-0565
Jmoore@gis.net
NATIONAL LAWYERS GUILD
MASS DEFENSE COMMITTEE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of January 2007, a true and correct copy of the foregoing was furnished by electronic notification for counsel registered for CM/ECF or by U.S. Mail to the following:

Bruce S. Rogow
Bruce S. Rogow, P.A.
Broward Financial Centre
500 E. Broward Blvd., Ste. 1930
Fort Lauderdale, FL 33394
Counsel for BSO Defendants
guntherc@bellsouth.net

Bernard Pastor
Wifredo Ferrer
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, FL 33128-1930
Counsel for Miami-Dade County Defendants
pastor@miamidade.gov
WAF@miamidade.gov

Warren Bittner
City of Miami Attorney's Office
Miami Riverside Center
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33133
Counsel for City of Miami Defendants
WRBittner@ci.miami.fl.us

Michael Fertig
Jennifer Cohen Glasser
Akerman Senterfitt
One Southeast Third Avenue, 28th Floor
Miami, FL 33131-5600
Counsel for Hialeah Defendants
mfertig@akerman.com
jennifer.glasser@akerman.com

Rachel Entman
Beth Jarrett
Office of the United States Attorney
99 N.E. 4th Street, Suite 300
Miami, FL 33132-2111
Counsel for the Federal Defendants
Rachel.Entman@usdoj.gov
Beth.Jarrett@usdoj.gov

Ronald J. Cohen
Maria Montenegro
Osnat K. Rind
Ronald J. Cohen, P.A.
Andrew Jackson Building
8100 Oak Lane, Suite 403
Miami, Lakes, FL 33016
Counsel for Defendant Jesse Henriquez, *et al.*
rcohen@roncohenlaw.com
mimimonte@aol.com

Robert W. Ross, Jr.
Ross Law Firm, P.L.
3923 Lake Worth Road, Suite 102
Lake Worth, FL 33461
Counsel for Plaintiffs
bravelaw@mindspring.com

Beverly Pohl
Broad and Cassel
100 SE Third Ave., Ste. 2700
Fort Lauderdale, FL 33394
Counsel for BSO Defendants
bpohl@broadandcassel.com

Carol A. Sobel (Pro Hac Vice)
Law Office of Carol A. Sobel
429 Santa Monica Boulevard, Suite 550
Santa Monica, CA 90401
Counsel for Plaintiffs
CarolSobel@aol.com

Jonathan Moore (Pro Hac Vice)
BELDOCK, HOFFMAN & LEVINE LLP
99 Park Avenue, Suite 1600
New York, NY 10016
Counsel for Plaintiffs
jmoore@gis.net

Mara Verheyden-Hilliard (Pro Hac Vice)
Carl Messineo (Pro Hac Vice)
Partnership for Civil Justice, Inc.
10 G St. NE, Suite 650
Washington, DC 20002
Counsel for Plaintiffs
mvh@JusticeOnline.org
cm@JusticeOnline.org

 

 

_____      s/ Andrea Costello      _____
_____Andrea Costello