**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.  04-20707-CIV-ALTONAGA/Turnoff**

KILLMON, et al.,

      Plaintiffs,

v.

CITY OF MIAMI, et al.,

      Defendants.

_____/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT MIAMI-DADE**
**COUNTY'S MOTION FOR PROTECTIVE ORDER CONCERNING THE**
**FTAA OPERATIONAL PLAN**

**INTRODUCTION**

The central allegation of this action is that the Defendant City of Miami ("City"), and Defendant Miami-Dade County ("County"), created a specific joint plan for policing demonstrations at the Free Trade Area of the Americas ("FTAA") meetings in Miami in November 2003.  That plan included a deliberate and coordinated intent to prevent potential violence, a wholly speculative prospect, by preempting lawful expressive activity.  Plaintiffs allege that Defendant County participated in the development of the Operational Plan ("Plan"), and executed it, resulting in Plaintiffs' arrests without probable cause and the unlawful use of force against them.  Plaintiffs' claims against the County require them to prove that their injuries resulted from a policy, practice, and/or custom of the County.  Moreover, apart from their *Monell* claims, Plaintiffs are required to prove intent to establish a violation of their constitutional rights, or, at a minimum, "deliberate indifference" to their rights.  For these reasons, the disclosure of the Operational Plan is necessary to the fair adjudication of this case.

Against this backdrop, Defendant County claims that the Plan cannot be produced, even under a protective order, because it would jeopardize future police actions at mass demonstrations, even

though the demonstrations occurred more than three years ago. The County also argues that the Plan would not be subject to disclosure pursuant to Florida's Public Records Act, but this contention, necessarily, cannot meet the balancing test the Courts apply to decide whether materials should be disclosed. The County's argument ignores the important distinction between a generalized request from the public to obtain information, as opposed to the weight that must be given to a request made for documents central to ongoing litigation, and the fact that the Eleventh Circuit does not recognize an "official information" privilege for law enforcement practices.

This Circuit requires a demanding "balancing of interests," weighing the requesting party's need for access to the documents against the County's need for confidentiality. *Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983). Against that test, Plaintiffs are clearly entitled to obtain the documents with the only remaining issue being the terms of a protective order. If Defendant does not want to disclose the Operational Plan, under a protective order, it should be precluded from arguing that it had no policy, practice, and/or custom to intentionally violate Plaintiffs' constitutional rights.[1]

## STATEMENT OF FACTS

Plaintiffs' discovery requests for the FTAA Operational Plans of Defendant Miami-Dade County ("County") and City of Miami ("City") initially came before the Court to determine whether the Plans contained information necessary to prepare the Third Amended Complaint. (Dkt. #219.) On July 1, 2005, Defendants County and City were ordered to provide their respective FTAA Operational Plans to the Court for *in camera* review. The matter was referred to Magistrate Judge Turnoff. (Dkt. #252.)

Following hearings on July 7, 2005, and July 8, 2005, nearly all of which were conducted in-chambers with only the Defendants, the court permitted each Defendant to prepare a summary document

---

[1] In such a case, Plaintiffs respectfully request that the Court issue a judicial determination that Plaintiffs have proven that Defendant's actions and the resulting constitutional violations were part of and the result of an intentional policy, custom and/or practice to preempt protected expressive activities and which showed deliberate indifference to Plaintiffs' rights.

2

to be provided to Plaintiffs under an extraordinarily restrictive, counsel-only, protective order.[2] (Dkt. #257.)  Pursuant to the Magistrate's Order, each defendant created a "List of Names," including individual ranks and little more, derived from the Plans and filed under seal with the Court. *Id.* The lists were provided to Plaintiffs pursuant to the Magistrate's July 12, 2005, Order.

At that time, Plaintiffs filed objections to the scope of the Magistrate's order and the protective order entered. (Dkt. #263.)  Plaintiffs' objections included, *inter alia*, that there was no good cause for a protective order as nearly all of the limited information provided subject to the secrecy provisions was, in fact, already public and that Defendants could not meet their burden to demonstrate that there was any potential harm from the release of the Plans then nearly two years after the FTAA protests. *Id.* Because disclosure of the Plans was being sought solely for purposes of amending the Complaint, the Court left open future disclosure for the merits litigation and vacated the protective order entered by the Magistrate as "no longer necessary." (Dkt. #341.)

At the recent scheduling conference on December 4, 2006, the disclosure of the Plans was again put in issue.  In response to Defendants' objections to production of their respective Plans, the Court ordered Defendants to file motions for a protective order to resolve this matter.  (Dkt. #414.)

## ARGUMENT

### I.    The Requirement of "Good Cause" to Justify Issuance of a Protective Order

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1).  The discovery sought need only appear reasonably calculated to lead to the discovery of admissible evidence.  *Id.*  See also *U.S. v. Nixon*, 418 U.S. 683,

---

[2] At the status conference on July 1, 2005, Plaintiffs' counsel represented to the Court that they would only agree to a counsel-only protective order (while retaining the ability to return to the Court if additional disclosure was necessary to confer with our clients or for depositions, etc.) concerning *substantive information* in the Operational Plans.  As noted in their objections, Plaintiffs would not have agreed to such a restrictive  protective order for merely a "list of names" derived from the Plans, as ordered  disclosed by Magistrate Judge Turnoff, nor is such a restrictive order necessary now for disclosure of the Plans in their entirety.

709 (1974) (finding discovery should be broad and a generalized assertion of privilege must yield to the demonstrated, specific need for evidence).

Federal Rule of Civil Procedure 26(c)(2) permits a court, upon motion by a party and a showing of "good cause," to enter a protective order to provide that disclosure or discovery may be had only on specified terms and conditions. *Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304, 1313 (11th Cir. 2001). The Eleventh Circuit applies a four-part test for finding "good cause." The party moving for a protective order must demonstrate: "(1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order.[3]" *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987).

Good cause "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac*, 805 F.2d 1, 7 (1st Cir. 1986). *See also Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998). The Eleventh Circuit also requires a more demanding "balancing of interests," weighing the party's interest in access against the other party's interest in confidentiality." *Newman*, 696 F.2d 796; *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

## II.   Plaintiffs' Need for the Operational Plan, Its Relevance to Their Claims and the Public Interest Requires Disclosure of Defendant's FTAA Operational Plan

Defendant County argues that the federal common law qualified "official information privilege" precludes *any* disclosure of the Operational Plan. According to the County, it is a "blueprint" or "playbook" of "strategies and techniques employed in response to mass demonstrations, protests, and civil disobedience" that "outlines...methodology, contingency responses, personnel and staffing

---

[3] Since Defendant County is arguing against any disclosure of the Operational Plan, Plaintiffs reserve the right to address any of these factors to the extent that they are not discussed herein and relate to the terms governing use of the information in the Plan after the Court resolves the issue of disclosure of the Plan.

4

schedules, officer movements, and equipment inventories," the disclosure of which to the public would, allegedly, "hinder law enforcement strategies and jeopardize the public safety."[4]  Def.'s Memo at 3-5; Affidavit of Major Louis A. Battle ("Battle Aff.") at ¶ 5-6, 10, 12, 13 & 16. Defendant also argues, in the virtually identical, conclusory language used by the City, that the potential disadvantages of disclosure of the Operational Plan outweigh Plaintiffs' need for the information to prove their claims based on an alleged threat to individual officers' safety (relying on alleged incidents at other demonstrations, most of which are in other countries) and the effectiveness of law enforcement "to respond to and control future demonstrations."  Battle Aff. ¶¶ 7-10, 12 & 15.  As explained below, the Plaintiffs' need for this relevant information, as well as a balancing of the interests asserted by each party, weighs in favor of disclosure.

Defendant's argument is fatally flawed in a key respect.  The Eleventh Circuit does not recognize a federal "official information" privilege in the context of litigation related to law enforcement practices.  Defendants sole authority for the assertion of this privilege is based on *Branch*

---

[4]  Plaintiffs have previously informed the Court that they do not anticipate the need for information in the Operational Plan about maritime operations.  Plaintiffs would add, for purposes of this motion, that they are also not seeking disclosure of information in the Plan related to: aviation operations; traffic patrol plans (to the extent that they do not involve officers who engaged in stops, detentions or arrests); counter-sniper assignments, procedures, communications and positions; responses to unidentified items; air security, in-flight aircrafts ,or highjacking information and identification; hospital information; itinerary information related to FTAA delegates for times other than when attending FTAA meetings.

Plaintiffs are willing to limit disclosures in the following categories to information related to their arrests and/or protest activities: emergency procedures, including evacuation and transportation routes; locations to be searched for explosives; vehicle sweep information; Fire Department/EMS activity unrelated to the dates and times of Plaintiffs' arrests or use of excessive force against Plaintiffs or other demonstrators; radio frequency information; information related to international or domestic terrorism, except where it relates to demonstrators or the planning or dealing with/responding to demonstrators and demonstrations to the extent that conduct by protesters may be classified or mis-classified as such); responses to nuclear, chemical or biological weapons attacks to the extent that it was the basis for the arrests of Plaintiff Diamond and others; scenario information for situations not involving protesters, such as Foreign Intelligence information, unless it relates to Plaintiffs or demonstrators or demonstrations).  However, if any of the Defendants intend to assert that their actions, which resulted in violations of the Plaintiffs' constitutional rights, were a result of any agreements made with other agencies concerning any of these areas, or that they took action against the Plaintiffs based on these enumerated areas of the Plan, then Plaintiffs are seeking such information as part of the Operational Plan disclosure.

*v. Phillips Petroleum Co.*, 638 F.2d 873, 879 (5th Cir. 1981),[5] and cases from other jurisdictions.  In

*Branch*, although the Court recognizes that the privilege exists in evidentiary theory, the issue discussed

and decided is whether an explicit federal statutory provision under Title VII, prohibiting public

disclosure of deliberative process information concerning discrimination claims received by the Equal

Employment Opportunity Commission, bars disclosure of that information in related civil litigation.

*Id.* at 879.  No such federal statutory exemption exists in this case for the Operational Plan.  Moreover,

the Eleventh Circuit, as do most federal courts, generally, disfavors this type of privilege in federal civil

rights claims.  *See ACLU v. Finch*, 638 F.2d 1336, 1342-44 (5th Cir. 1981); *Hancock v. Hobbs*, 967

F.2d 462, 467 (11th Cir. 1992).  Assuming *arguendo* the Court considers Defendant's argument as to

the application of this privilege here, the County has failed to meet its burden to prevent disclosure of

the Plan.

Some courts have recognized a *qualified* federal common law privilege for "official

information," the application of which involves a balancing of interests virtually identical to the test

this Circuit applies generally to privileges. *King v. Conde*, 121 F.R.D. 180, 190 (E.D.N.Y. 1988). To

invoke the privilege, a party must make a substantial threshold showing that specific harms will result.

*Goodman v. City of New York*, 2004 WL 1661105 (S.D.N.Y. 2004).  Courts must weigh the potential

benefits of disclosure against the potential disadvantage, plaintiffs' need for the information and

whether it is available from some other source, which is arguably the most important factor.  *See e.g.,*

*Crawford v. Dominic*, 469 F.Supp. 260, 263 (E.D. Pa. 1979); *Inmates of Unit 14 v. Rebideau*, 102

F.R.D. 122, 127 (N.D.N.Y. 1984). In civil rights cases against law enforcement, there is, generally, no

other source for the information sought.  *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Ca. 1995).

In civil rights cases involving allegations of police misconduct, a balancing of interests is moderately

---

[5]  In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as
precedent certain former Fifth Circuit opinions as of September 30, 1981.

pre-weighted in favor of disclosure. *Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Ca. 1987), particularly where the disclosure is sought by an individual litigant and his/her counsel. In such circumstances, a sufficiently well-crafted protective order provides adequate safeguards for the information. *Id.* at 662, 666.

The court should also consider the public's interest in the disclosure of the information. The strong public interest in uncovering the civil rights violations at issue in this litigation would be substantially harmed if access to the Operational Plan is denied.

> Each citizen acts as a private attorney general who takes on the mantel of the sovereign, guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

*Wood v. Breier*, 54 F.R.D. 7, 10-11 (E.D. Wisc. 1972) (internal quotation marks and citations omitted). The "great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery." *King*, 121 F.R.D. at 195.

A balancing of these factors favors disclosure. Plaintiffs are entitled to discovery of the Operational Plan because they have sufficiently alleged facts based on the Plan which, if true, support a reasonable inference that Defendant County is liable under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). *See e.g., Torres v. Kuzniasz*, 936 F.Supp. 1201, 1209-14 (D.N.J. 1996) (internal affairs investigation documents disclosed as relevant to proving policy or custom). Specifically, Plaintiffs have alleged a deliberate and joint plan (i.e., Defendant's Operational Plan), developed through meetings over the course of more than six months and implemented for the FTAA protests with the City of Miami individual supervisory Defendants in a primary leadership role. Third Amended Complaint ("TAC") at ¶ 84. Miami-Dade had primary responsibility for certain sectors of the City and

7

adopted its own plan for those areas.  The Plan was intended to, and did, produce violations and deprivations of Plaintiffs' First, Fourth, Fifth and Fourteenth Amendment rights.  TAC ¶ 76. Defendant County developed and executed this Plan to "police" the FTAA demonstrations by preventing expression in advance of its occurrence and by subjecting Plaintiffs and others to detention, search, arrest, and unreasonable force without probable cause.  *Id.* Defendant City developed "Rules of Engagement" to implement the Plan and each agency, including the County, was required to follow those rules. *Id.* at ¶ 84.  Plaintiffs have also alleged that their detention at  the "kennel," a make-shift detention center, maintained with inhumane conditions, created and operated jointly by Miami-Dade Police Department and Miami Police Department solely for FTAA arrestees, was part of the joint Plan created and adopted by the County Defendant.   TAC at ¶ 26, 27, 76 & 110.

Disclosure of the Plan is also required as it contains information concerning high-ranking officials "whose edicts and acts may fairly be said to represent official policy" and may, by their actions, also subject the government entity to liability under Section 1983.  *Monell*, 436 U.S. at 694.  Even if Defendant's actions during the FTAA protests are viewed as a "single incident," the Plan may establish *Monell* liability on a number of different bases.  First, a "single incident" may establish *Monell* liability where, as here, it is part of a deliberate choice by policymakers to "pursue a particular course of action." *Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1969).  *See also Cooper v. Dillon*, 403 F.3d 1208, 1223 (11th Cir. 2005) (deliberate decision to enforce state statute establishes liability for *Monell*).  The Plan may also prove *Monell* liability if it is shown to be an unconstitutional municipal policy.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831-32 (1985).

It does not matter whether the same action taken in the past will be used again in the future as even a single decision by a policymaker "unquestionably constitutes an act of official government policy." *Pembauer*, 475 U.S. at 475.  *See also Owen v. City of Independence*, 445 U.S. 622 (1980); *Cooper*, 403 F.3d at 1222.

Also, if, as Defendant argues, the Plan contains information such as "tactics, strategy, methodology, contingency responses, and officer movements," Battle Aff. at ¶ 4, the Plan may establish *Monell* liability for the failure to train County officers adequately on the lawful bases for arrest, use of force, detention, sexual assault, and other violations of rights implicated by Plaintiffs' claims. *City of Canton v. Harris,* 489 U.S. 378, 380 (1989). Clearly, this information is relevant and Plaintiffs have a demonstrated need for it.

In its arguments about the relevance of the Operational Plan to Plaintiffs' claims, the County makes two important concessions. First, it concedes that the Plan does contain policy information for the County's participation in policing the FTAA demonstrations. Def.'s Memo at 9. Second, it concedes that "a limited number of pages may not be confidential" and can be disclosed, although Plaintiffs are left to guess as to what this information might be. *Id.* at 9-10. These concessions, alone, form a sufficient basis for disclosure of the entire Plan under a protective order.

Defendant has not met its burden of proving "good cause" as to why the Plan should not be provided to Plaintiffs. Contrary to Defendant's assertion, the Plan is not "completely irrelevant to Plaintiffs' claims of due process violations for conditions of confinement" because part of Plaintiffs' allegations are that their detention at the "kennel," a make-shift detention center with inhumane conditions, created and operated jointly by M-DPD and MPD solely for FTAA arrestees, was part of the joint Plan created and adopted by the County. TAC at ¶ 26, 27, 76 & 110. Defendant's omission the make-shift detention facility in its references to what the Plan does not contain is also telling. Def.'s Memo at 8 ("the Plan does not contain any information regarding the County's jail, court proceedings or the State Attorney's prosecutions").

Defendant's conclusory statements that the Plan bears no relevance to Plaintiffs' claims for wrongful arrest, First Amendment violations or malicious prosecution does not meet the requisite proof required to outweigh Plaintiffs' need. Def.'s Memo at 9. *King*, 121 F.R.D. at 191-94.; *Anderson*, 805

9

F.2d at 7. This is not a determination that Defendants are permitted to make at this stage of the litigation in light of the broad nature of federal litigation in providing liberal pre-trial discovery. *ACLU v. Finch*, 638 F.2d 1336, 1343-44 (5th Cir. 1981); *Sirmans v. City of South Miami*, 86 F.R.D. 492, 495 (S.D. Fla. 1980). Plaintiffs' have alleged that M-DPD officers were acting pursuant to the joint Plan when they took multiple actions against Plaintiffs, including: political profiling; stopping, detaining and arresting them without probable cause; using unreasonable and excessive force; strip searching some of them; staggering bond hearings to prevent them from returning to the protests; pursuing prosecutions in the absence of probable cause ; and detaining them at the "kennels" under inhumane conditions without access to counsel, among other deprivations. TAC at ¶¶ 26, 27, 76, 84 & 110. There is a "special danger" in light of the paramount importance of federal civil rights policy in permitting the County to define the scope of its own privilege when the misconduct of its agents is alleged. *See Finch*, 638 F.2d at 1343-44; *King*, 121 F.R.D. at 187-88. "Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden." *Wood v. Breier*, 54 F.R.D. 7, 10-11 (E.D. Wisc. 1972). Plaintiffs have a right to discover the information that is needed to ultimately prove the truth that they seek through the judicial process. It is a fundamental perversion of the adversary process to permit Defendant County to define "relevance" without disclosing key material and permit Plaintiffs to review it and decide, as the case progresses, how it fits with Plaintiffs' theory of this case, not Defendant's.

Against Plaintiffs certain need for this information, Defendant County offers only speculation about harm and disadvantages which do not outweigh Plaintiffs' need for disclosure. None of the factors that courts find to establish potential harms to disclosure have been shown by Defendant County. There are no likely specific, immediate, and concrete: (1) threats to police officers' safety; (2) invasion

of police officers' privacy; (3) weakening of law enforcement programs; (4) chilling of police internal investigative candor; (5) chilling of citizen complainant candor; or (6) violations of state privacy law. *See King v. Conde*, 121 F.R.D. at 191-94   Defendant's speculation about alleged threats to officer safety and weakening of law enforcement programs with regard to Miami-Dade Police Department ("M-DPD") policing of mass demonstrations if the Plan is disclosed do not carry the heavy burden to block disclosure.  Battle Aff. at ¶¶ 10-13, 15 & 16.

First, the County claims that "disclosure will compromise the safety of the officers in the field...if the officers assigned are unable to maintain the peace" because "disclosure of the Department's staffing numbers and methodology with respect to the specific officer assignments will reveal the Department's personnel potential weaknesses." Battle Aff. at ¶ 16.  Other courts considering the "threat to police officer safety" have defined this factor as requiring disclosure of specific information that could present a danger to a particular officer, such as disclosure of an officer's home addresses in cases involving past violence between him/her and a plaintiff or other members of the community. *King*, 121 F.R.D. at 191.  Plaintiffs assume that the Operation Plan would not contain any officers' home addresses and they would be willing to have any redacted.[6]   The purported tactical considerations Defendant raises have also been rejected as a basis for denying disclosure in light of a plaintiff's demonstrated need for the information. *See Kelly*, 114 F.R.D. at 666 (law enforcement interest outweighed regarding disclosure of manuals, memoranda, and other documents reflecting police department policies established for use of force in making arrests and training on same in light of protective order governing terms of disclosure).  It also stretches credulity to believe that after the general public has observed and documented, through video and extensive news reporting, the M-

---

[6] Also, as explained in Section IV. below, Plaintiffs already possess lists with officers' names and badge numbers which were obtained through Public Records Act requests or as part of the limited discovery permitted by the Court to amend the Complaint.  Defendant has also made documents readily available to the public concerning officer field force formations, use of force manuals and personnel information. *See* Section IV., *infra.*

DPD's so-called secretive tactical game plan, a law enforcement entity so concerned with protecting this "confidential" information against detection would seek to use those same tactics, weapons, methods, responses, officer movements, equipment, and schedules repeatedly.  For example, how does a plan for allegedly policing mass demonstrations which occur as outdoor multi-mile events with hundreds of thousands of protesters have any comparability to M-DPD's policing the 2004 Presidential debates at the University of Miami in a closed auditorium?  Battle Aff. at ¶ 17.

As to Defendant's claim that disclosure would weaken law enforcement programs, Battle Aff. at 15-16, much of these allegations relate to unsupported and undocumented speculation about protesters at other demonstrations, in some cases over six years ago.  *Id.* at ¶¶ 7-10.  Therefore, disclosure puts no M-DPD officer at risk.  Defendant's rank speculation about the past, none of which involves actual FTAA demonstrations in Miami 2003 involving any of these Plaintiffs, is precisely the type of policies and acts which criminalize dissent that are at the core of what this litigation seeks to remedy and prevent.  *See Bourgeois v. Peters*, 387 F.3d 1303 (11th Cir. 2004).

The Supreme Court has repeatedly instructed that, if the First Amendment means anything, it is that the government may not suppress or disrupt speech in advance of its expression in order to prevent speculative violence.  *Cox v. Louisiana*, 379 U.S. 536, 551 (1965).  The police may not preempt expression in Miami based on stereotypes of some unidentified persons or groups who may have engaged in unlawful activity in Seattle, Quebec or Prague years earlier.  This is the worst type of guilt by and for association that the constitution prohibits.  *See NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982); *Healy v. James*, 408 U.S. 169 (1972).  Defendant should not be permitted to use the discovery process as a shield against the unconstitutional policy which it so boldly and willfully created and executed to violate Plaintiffs's rights. Even if there were some merit to this argument, a protective order that limits disclosure to the plaintiffs' attorneys, clients, support staff, and experts could be an "especially apt remed[y] for this problem."  *King*, 121 F.R.D. 180.

This case is no imaginary street battle being waged against the police by some unknown protesters in multiple jurisdictions and around the world, as Defendant claims.  Plaintiffs were unlawfully arrested, assaulted, jailed, pepper-sprayed and prosecuted by Defendant.  That is the reality of this case and Plaintiffs are entitled to the documents necessary to prove that their constitutional rights were violated.  *See Kunstler v. City of New York*, 439 F.Supp.2d 327, 328 (S.D.N.Y. 2006) (law enforcement privilege does not prevent disclosure of presence of undercover police officers in Section 1983 action challenging violation of constitutional rights during demonstration).

The other authorities cited by Defendant in support of its arguments concerning its alleged law enforcement interests are equally faulty for various reasons.  Def.'s Memo at 4-5.  *See DG-2 v. Degnan*, 130 F.R.D. 326, 333 (D.N.J. 1990) (documents reflecting internal opinions and analysis concerning investigations that had used information gathered by the plaintiff, were "collateral" and not relevant to confidential informant's claim of breach of contract); *Castle v. Jallah,*142 F.R.D. 618, 622 (E.D. Va. 1992) (institutional security interest outweighed because prisoner was still incarcerated and alleged excessive force with no relevance concerning department operating procedures regarding responses to prison riots or failure to train); *Pack v. Beyer*, 157 F.R.D. 226, 232-33 (D. N.J. 1994) (analysis of "state secrets" privilege finding information regarding confidential prison informants was not relevant to claims of discrimination based on fact that prisoner was still incarcerated, plaintiff's counsel conceded that there was no need for the documents and information was obtainable from other means); *Rossbach v. Rundle*, 128 F.Supp.2d 1348 (S.D. Fla. 2000) (discovery requests for "every conceivable office rumor" too broad and not relevant to Plaintiffs' prima facie case of sexual harassment).

Some of the authorities relied on by Defendant actually support Plaintiffs' position.  Def.'s Memo at 3-4.  *See Jones v. DeRosa*, 238 F.R.D. 157, 165 (D.N.J. 2006) (disclosing information sought in police misconduct case while noting balancing test for qualified law enforcement privilege "must be weighed in favor of disclosure to the plaintiff"); *Kelly*, 114 F.R.D. at 662-63 (excessive force case

13

finding the balancing test is moderately weighted in favor of disclosure to litigant, and her attorney, as opposed to general public, where protective order is drawn making law enforcement interest "drop[] dramatically" and offers "sufficient protection to the government interest"); *National Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 88, 96 (S.D.N.Y. 2000) (police misconduct case finding that "strong public interest in uncovering the civil rights violations alleged in this Complaint would be substantially harmed" if access to allegedly privileged information was denied).

As explained above, Plaintiffs here can show that discovery of the Plan is not only relevant, but is required to prove their claims.  There is no alternative way to prove that Defendant acted with intent and deliberation in developing and executing the Plan which Plaintiffs allege was applied to disrupt, prevent and stifle lawful expressive activities during the FTAA demonstrations.[7]  *Soto*, 162 F.R.D. at 616; *Barrett v. City of New York*, 237 F.R.D. 29, (E.D.N.Y. 2006) (law enforcement privilege does not protect Civilian Complaint Review Board documents relating to pending investigation of officers in case challenging false arrest, illegal strip search, malicious prosecution and fabricated evidence). Impediments to fact finding in Section 1983 litigation, such as the preclusion of any disclosure sought by Defendant here, are not favored.  *Kunstler*, 439 F.Supp.2d at 328. Defendant has not suggested any other source that is more convenient or less burdensome than disclosure of the Operational Plan for the simple reason that there is none.  Defendant has gone to great lengths, in court hearings and in its pleadings, to explain how the FTAA protests and the Operational Plan that was developed to respond to this event was unique and a one-time momentous happening in the County's view.  If Defendant believes that there is another source for the Plan, it should identify it for the Court and make the necessary evidentiary showing to prove it.

---

[7]  Since the material sought is in the possession of the defendant, the court should not require the plaintiff to prove the relevance of all of the information contained in the Operational Plan, or to prove that the information is available elsewhere. *King v. Conde*, 121 F.R.D. at 195.   Rather the court should err on the side of wider discovery.  *Id.*

III.    **The State Law Public Records Act Exemption Does Not Prohibit the Disclosure of the Operational Plan in Federal Civil Rights Litigation**

Relying on a state statutory Public Records Act exemption for "any comprehensive policies or plans compiled by a criminal justice agency pertaining to the mobilization, deployment, or tactical operations involving in responding to emergencies" that are not generally made available to the public for inspection, the County urges this Court to follow a state court and preclude disclosure of the Plan. Def.'s Memo at 6. This argument deliberately ignores that, as Plaintiffs have asserted federal constitutional claims in this case, any claims of privilege are controlled by federal common law. *See Finch,* 638 F.2d at 1342-43; *Kerr v. U.S. District Court*, 511 F.2d 192, 197 (9th Cir. 1975); *In re Pebsworth,* 705 F.2d 261, 262 (7th Cir. 1983); and Fed. R. Evid. 501.

The County's argument has been rejected by the Eleventh Circuit. In *ACLU v. Finch*, Mississippi residents brought suit against state official for violations of their First Amendment and other constitutional rights based upon harassment and surveillance of lawful political activities largely through the illegal activities of a state commission. *Finch*, 638 F.2d at 1342-43. In discovery, the *Finch* plaintiffs sought disclosure of certain files and records of the commission which had been sealed under a state statute abolishing the commission shortly after the litigation was filed. *Id.* The government unsuccessfully argued that the federal court should observe the "privilege" created by the state statute in the interests of comity.[8] *Id.* at 1343.

Evidentiary privilege in federal courts are governed by Rule 501 of the Federal Rules of Evidence. Except "with respect to an element of a claim or defense as to which State law supplies the rule of decision," privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." Fed. R. Evid. 501.

---

[8] There was a disagreement between the appellate and district courts concerning whether there was even an actual evidentiary privilege established by the state statute, however, the Court assumed, for the sake of argument, that the state courts would construe the statute as creating a privilege. *Finch*, 638 F.2d at 1343.

15

When a litigant seeks to assert a privilege "not existent in the common law but enacted by the (state) legislature based on unique considerations of government policy," courts test it by balancing the policies behind the privilege against the policies favoring disclosure. *Finch*, 638 F.2d at 1343. "That the courts of a particular state would recognize a given privilege will not often of itself justify a federal court in applying that privilege. It is sometimes said that 'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy. (internal citations omitted). *But there is almost always such a cost to 'the special federal interest in seeking the truth in a federal question case.*[9]'" *Id.* (emphasis supplied). *See also Simmons v. Newmann*, 1998 WL 776846 (S.D. Fla. 1998) (rejecting exemption in § 119.07, Fla. Stat., of the Public Records Act as preventing disclosure of addresses of former sheriff's office employees needed to be served with subpoenas in order to prosecute civil rights case).

On balance, the application of a state privilege in a federal case would "frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) (holding state privilege statutes are not binding in discovery for federal civil rights police misconduct action).

> [S]tate rules protecting state officers must always be viewed with caution because they may be parochially designed to thwart federal interests: It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statute whose central purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their

---

[9] Even where a federal civil action involves both federal and state claims and the asserted privilege is relevant to both claims, federal courts have consistently held that privilege is governed by federal law. *See Hancock*, 967 F.2d at 466-67.

federal claims.

*Id.* at 187-88.

Here, the federal interest in an independent evaluation of the claimed privilege is particularly strong.[10]  "The purpose of enacting [Section] 1983 was to ensure an independent federal forum for adjudication of alleged constitutional violations by state officials; and ... there is a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged."  *Finch*, 638 F.2d at 1343.  The so-called state law "privilege" asserted by the County is not "fully consistent" with the federal common law official information privilege, to the limited extent that such a privilege exists, nor is there no conflict with or no cost to the federal substantive policy at issue in this case.  Def.'s Memo at 6.  The federal interest in adjudication and "seeking the truth" in Plaintiffs' claims of constitutional violations of massive police and government misconduct pursuant to Section 1983 requires disclosure of the Operational Plan "despite the existence of a state rule holding the same [information] privileged."  *See Carr v. Monroe Manufacturing Co.*, 431 F.2d 384, 388-89 (5th Cir. 1970) (on balance, need for disclosure of employee and employer information which raised state law privacy concerns outweighed by relevance to racial discrimination claims and "necessary for the just disposition" of the case).

The reasoning of the state courts in two cases advanced by Defendant County, *Timoney v. City of Miami Civilian Investigative Panel*, 917 So.2d 885 (3d DCA 2006) or *Mastrapa v. S. Fla. Money Laundering Strike Force*, 928 So.2d 421 (3d DCA 2006), is totally inapt.  As discussed above, the issue of disclosure now before the Court is one of federal law, not state law.  Defendant's cases, which interpret and apply state law, are not relevant to a federal civil rights action brought pursuant to 42

---

[10]  Similarly, courts have also found that the application of exceptions in the federal Freedom of Information Act are also "not intended to create evidentiary privileges for civil discovery."  *Kerr*, 511 F.2d at 198; *Hodgson v. GMAC*, 54 F.R.D. 445, 446 (S.D. Fla. 1972).

U.S.C. Section 1983 to challenge police and government misconduct.[11] *Finch*, 638 F.2d at 1343. Moreover, *Timoney* did not, as required here, weigh the competing factors involved in discovery of material central to an adversary process. Also, *Mastrapa* is irrelevant because the court did not address the assertion of a privilege by a law enforcement entity – the defendant merely argued that production of some of the information sought in an out of state criminal proceeding was an "undue hardship" because it related to "ongoing law enforcement investigations." *Id.* at 423-24. Defendant has not stated or proven any such burden exists here.

IV.     **No "Good Cause" Exists Where Some of the Information Sought to be Protected From Disclosure is Publicly Available**

Defendant has not met the burden of proving "good cause" because it cannot establish the requisite concrete "harm" from disclosure of the Operational Plan because some types of information which Defendant refers to as requiring protection might have already been disclosed through public records or as readily observable. And even if this is the case, Plaintiffs still show an overriding need for the Operational Plan and its relevance to their claims because no publicly available information could provide Plaintiffs with evidence of whether the Plan shows that Defendant's policy included a deliberate and coordinated intent to preempt lawful expressive activity, that this policy was carried out as intended, and resulted in Plaintiffs' arrests without probable cause and the unlawful use of force against them.

Defendant claims that its "personnel and staffing schedules, officer movements and equipment inventories" allegedly contained in the Operational Plan are "highly confidential." Battle Aff. at ¶ 5. However, anyone who was present in downtown Miami during the FTAA demonstrations could see

---

[11]  Doe v. Hudgins, 175 F.R.D. 511 (N.D. Ill. 1997), also lends no support to this argument. Def.'s Memo at 6.  *Doe* applies a balancing test and finds the government's interest in non-disclosure of investigatory files, while a criminal investigation and proceeding was pending against the defendant, did not outweigh the need for the information at that time because most courts generally find that such information is only discoverable after the close of an investigation. *Id.* at 516.

where officers were stationed and their formations, movements and equipment. Defendant County and City also made some of these types of information available to the general public through After-Action Reports which describe their command staff, as well as other individuals involved in Defendant's, and other agencies', law enforcement action during the FTAA meetings. *See* Plaintiffs' Notice of Filing in support of this opposition ("Pls.' Notice of Filing") at Ex. 1 (MPD) and Ex. 2 (Miami-Dade PD). Also, in response to an interrogatory request by Plaintiffs seeking to identify one potential defendant by requesting the names of all officers employed by the MPD during the FTAA meetings whose last names began with "T," the City of Miami voluntarily produced, outside any protective order, a computer print-out of <u>all</u> MPD officers deployed on November 17, 2003, for the FTAA. *Id.* at Ex. 3. All of the Miami-Dade Police Department command staff have their photographs, names and other identifying information posted on the public website for the department. *Id.* at Ex. 4. The Miami-Dade State Attorney's Office also disclosed, through a Public Records Act request, the command staff of MPD and M-DPD for the 2003 FAA meetings. *Id.* at Ex. 5. To be sure, these are but a handful of examples of what Defendant now claims is so-called "confidential" information that is already in the public domain.

**V.     A Protective Order Providing for the Terms of Disclosure of the Operational Plan Would Provide Sufficient Safeguards**

The entry of a protective order between the parties concerning the Operational Plan would provide sufficient safeguards to protect against the alleged potential injuries described by Defendant City. [12] *See e.g.*, *King*, 121 FRAT at 190; *Kelly*, 114 FRAT at 666 (ordering disclosure of police

---

[12] Plaintiffs' counsel are reluctant to legitimize the insinuation by Defendant's counsel that even under a signed confidentiality agreement concerning the terms of disclosure of the Operational Plan that Plaintiffs' counsel cannot be trusted to abide by the terms of such an agreement. Def.'s Memo at 8-9. Plaintiffs' counsel are experienced civil rights litigators who have entered into many similar agreements in the course of litigating against the government in various contexts, including police misconduct and litigation involving mass demonstrations involving local, state and federal law enforcement agencies. Indeed, in this case, Plaintiffs' counsel abided by the terms of a restrictive protective order entered by Magistrate Judge Turnoff.

methods and tactics related to use of force). Plaintiffs are willing to agree that disclosure of the information in the Operational Plan, to the extent it is not publicly available, shall only be available to Plaintiffs' counsel, their support staff, paralegal and experts designated to assist them, and the individual Plaintiffs to the extent that disclosure is necessary to prosecute this case.  If there is information contained in the Plan which is included in the list provided by Plaintiffs in footnote four of this memorandum, Plaintiffs are willing to concede that such information could be either redacted or withheld for the time being, reserving a right to seek such information if it is determined through discovery potentially to be relevant and necessary to Plaintiffs' case.  "Absent a special showing in a particular case, these kinds of measures usually will offer sufficient protection to the governmental interest. *Kelly*, 114 F.R.D. at 666.

If Defendant does not want to disclose the Operational Plan, even under a protective order, it should be precluded from arguing that the County had no policy, practice, or custom to intentionally violate Plaintiffs' constitutional rights and the Court should issue a judicial determination that Plaintiffs have proven that Defendant's actions and the resulting constitutional violations were part of and the result of an intentional  policy, custom and/or practice to preempt protected expressive activities and which showed deliberate indifference to Plaintiffs' rights.

## CONCLUSION

Based upon the foregoing reasons, Defendant Miami-Dade County's Motion for Protective Order to prevent any disclosure of the FAA Operational Plan should be denied.  The Court should Order disclosure of the Operational Plan under the terms of a protective order which permits Plaintiffs, and their clients, support staff and experts, to access the information to the extent necessary to prosecute this case and prove their claims.

DATED: January 17, 2007                     Respectfully Submitted,

                                                      s/ Andrea Costello
                                            ANDREA COSTELLO, FBN 532991

Carol A. Sober (Pro Hac Vice)               Andrea Costello,  FBN 532991
LAW OFFICE OF CAROL A. SOBEL                Alice K. Nelson,  FBN 211771
429 Santa Monica Boulevard, Suite 550       SOUTHERN LEGAL COUNSEL, INC
Santa Monica, CA 90401                      1229 N.W. 12th Avenue
T. 310 393-3055; F. 310 393-3605            Gainesville, FL 32601
CarolSobel@aol.com                          T. 352 271-8890; F. 352 271-8347
NATIONAL LAWYERS GUILD                      andrea.costello@southernlegal.org
MASS DEFENSE COMMITTEE                      alice.nelson@southernlegal.org


Robert W. Ross, Jr.,  FBN  921660           Mara Verheyden-Hilliard (Pro Hac Vice)
ROSS LAW FIRM, P.L.                         Carl Messineo (Pro Hac Vice)
3923 Lake Worth Road, Suite 102             PARTNERSHIP FOR CIVIL JUSTICE, INC.
Lake Worth, FL 33461                        10 G St. NE, Suite 650
T. 561 241-2790; F. 561 241-2790            Washington, DC 20002
bravelaw@mindspring.com                     T. 202 789-4330; F. 202 789-4333
NATIONAL LAWYERS GUILD                      mvh@JusticeOnline.org
MASS DEFENSE COMMITTEE                      cm@justiceonline.org
                                            NATIONAL LAWYERS GUILD
                                            MASS DEFENSE COMMITTEE


Jonathan Moore (Pro Hac Vice)
BELDOCK, HOFFMAN & LEVINE LLP
99 Park Avenue, Suite 1600
New York, NY 10016
T. 212 490-0400; F. 212 557-0565
Jmoore@gis.net
NATIONAL LAWYERS GUILD
MASS DEFENSE COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January 2007, a true and correct copy of the foregoing was furnished by electronic notification for counsel registered for CM/ECF or by U.S. Mail to the following:

Bruce S. Rogow
Bruce S. Rogow, P.A.
Broward Financial Centre
500 E. Broward Blvd., Ste. 1930
Fort Lauderdale, FL 33394
Counsel for BSO Defendants
guntherc@bellsouth.net

Warren Bittner
City of Miami Attorney's Office
Miami Riverside Center
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33133
Counsel for City of Miami Defendants
WRBittner@ci.miami.fl.us

Rachel Entman
Beth Jarrett
Office of the United States Attorney
99 N.E. 4th Street, Suite 300
Miami, FL 33132-2111
Counsel for the Federal Defendants
Rachel.Entman@usdoj.gov
Beth.Jarrett@usdoj.gov

Robert W. Ross, Jr.
Ross Law Firm, P.L.
3923 Lake Worth Road, Suite 102
Lake Worth, FL 33461
Counsel for Plaintiffs
bravelaw@mindspring.com

Bernard Pastor
Wifredo Ferrer
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, FL 33128-1930
Counsel for Miami-Dade County Defendants
pastor@miamidade.gov
WAF@miamidade.gov

Michael Fertig
Jennifer Cohen Glasser
Akerman Senterfitt
One Southeast Third Avenue, 28th Floor
Miami, FL 33131-5600
Counsel for Hialeah Defendants
mfertig@akerman.com
jennifer.glasser@akerman.com

Ronald J. Cohen
Maria Montenegro
Osnat K. Rind
Ronald J. Cohen, P.A.
Andrew Jackson Building
8100 Oak Lane, Suite 403
Miami, Lakes, FL 33016
Counsel for Defendant Jesse Henriquez, *et al*.
rcohen@roncohenlaw.com
mimimonte@aol.com

Beverly Pohl
Broad and Cassel
100 SE Third Ave., Ste. 2700
Fort Lauderdale, FL 33394
Counsel for BSO Defendants
bpohl@broadandcassel.com

Carol A. Sobel (Pro Hac Vice)
Law Office of Carol A. Sobel
429 Santa Monica Boulevard, Suite 550
Santa Monica, CA 90401
Counsel for Plaintiffs
CarolSobel@aol.com

Jonathan Moore (Pro Hac Vice)
BELDOCK, HOFFMAN & LEVINE LLP
99 Park Avenue, Suite 1600
New York, NY 10016
Counsel for Plaintiffs
jmoore@gis.net

Mara Verheyden-Hilliard (Pro Hac Vice)
Carl Messineo (Pro Hac Vice)
Partnership for Civil Justice, Inc.
10 G St. NE, Suite 650
Washington, DC 20002
Counsel for Plaintiffs
mvh@JusticeOnline.org
cm@JusticeOnline.org

_____ s/ Andrea Costello _____
_____ Andrea Costello